Filed 9/22/21  P. v. Jimenez CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ARSENIO JIMENEZ,<br><br>    Defendant and Appellant. | B297609<br><br>(Los Angeles County<br>Super. Ct. No. TA143132) |

APPEAL from a judgment of the Superior Court of Los Angeles County, John J. Lonergan, Jr., Judge.  Affirmed with directions.

Rachel Varnell, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, and Viet H. Nguyen, Deputy Attorney General, for Plaintiff and Respondent.

# INTRODUCTION

Arsenio Jimenez attacked his girlfriend, Byanka A., by striking her multiple times in the face with his fists, a sharp object, or both. Byanka suffered lacerations and brain injuries and spent several weeks in the hospital. The People charged Jimenez with, among other crimes, infliction of corporal injury on a cohabitant and assault by means likely to cause great bodily injury.

On the eve of trial, 15 months after the People initially filed charges, Jimenez filed a motion to continue the trial. Jimenez claimed he needed additional time to retain an expert witness who could provide testimony to support a defense of temporary insanity. The trial court continued the trial for two months. Two months later, Jimenez filed another motion to continue the trial, claiming that the last expert witness his attorney consulted could not provide the testimony necessary to establish temporary insanity and that he needed more time to obtain a (new) expert witness. The trial court denied the motion. A jury ultimately convicted Jimenez on both counts.

Jimenez argues the trial court erred in denying his second motion to continue the trial. In the alternative, Jimenez contends his trial counsel rendered ineffective assistance by failing to obtain an expert witness who could testify in support of the temporary insanity defense. Because the trial court did not abuse its discretion in denying the motion, and because the record does not demonstrate counsel for Jimenez's representation was deficient, we affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

A.  *Jimenez Attacks Byanka*

In April 2017 Jimenez and Byanka lived together with their infant daughter, H.J.  One morning Jimenez called his sister, Tiffany J.  Tiffany called law enforcement and reported she was concerned Jimenez might kill himself and his family.

Los Angeles County Sheriff's deputies arrived at Byanka and Jimenez's house and found Byanka unconscious on the floor.  She had puncture wounds between her eyes, her mouth was swollen, her face was covered in blood, and there was blood throughout the house.  H.J. was uninjured, fastened into a child car seat several feet from Byanka.  Paramedics took Byanka to the hospital.

Tiffany spoke with Jimenez again later that day and told law enforcement Jimenez was at a hospital in Santa Clarita.  When deputies arrived at the hospital, they found that Jimenez's hands were swollen and that he had lacerations on his knuckles, bandages around his wrists, and a mark on his neck.

A detective interviewed Jimenez the next day.  Jimenez said he and Byanka were arguing when Byanka got a knife and threatened to have her brother harm him.  Jimenez said Byanka picked up H.J. and threw her on the couch, which caused H.J. to cry.  Jimenez admitted that he "lost it" or "snapped" and that he punched Byanka six times.  Deputies impounded and searched Jimenez's car and found a knife underneath a blue towel.  There was blood on the knife and the towel.

Byanka suffered injuries to several areas of her brain and spent six weeks in the hospital.  She was in a coma for the first eight days.  When she woke up, her right side felt "dead" and she could not walk.  After leaving the hospital, she spent one month

3

at a rehabilitation center learning to walk again and had two surgeries on her face and mouth. Byanka had no memory of how she suffered her injuries.

B.    *The People Charge Jimenez*

On May 2, 2017 the People charged Jimenez with attempted murder (Pen. Code, §§ 187, subd. (a), 664),[1] inflicting corporal injury on a cohabitant resulting in a traumatic condition (§ 273.5, subd. (a)), and assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4)). The People subsequently added a fourth count for aggravated mayhem (§ 205). For the first three counts, the People alleged Jimenez personally inflicted great bodily injury that caused Byanka to become comatose due to brain injury, within the meaning of section 12022.7, subdivision (b), and under circumstances involving domestic violence, within the meaning of section 12022.7, subdivision (e).

C.    *Jimenez Files Two Motions To Continue the Trial,*
        *and the Trial Court (Effectively) Grants One of Them*

The trial court initially set trial for April 6, 2018, but subsequently continued it to August 21, 2018. On August 17, 2018 Jimenez filed a motion to continue the trial again. At the hearing on the motion, counsel for Jimenez stated that he was having a "great deal of difficulty finding [an expert] who was willing and qualified to take on the assertions that [the defense] believe[d] [it] should be able to make," which counsel described as "critical to [the] defense," and that the Los Angeles County Superior Court panel of experts did not have "adequate experts

---

[1]    Statutory references are to the Penal Code.

4

for what [the defense was] trying to show . . . . " Counsel said he "found one [expert] several months ago who did an evaluation and then said that they weren't able to participate further." Counsel said a new potential expert, Dr. Barry Hirsch, was "in the process of evaluating" Jimenez.

When the court asked counsel for Jimenez how long it would take Dr. Hirsch to complete his evaluation, counsel stated that Dr. Hirsch had called Jimenez "yesterday," that counsel anticipated "they will be meeting soon," and that counsel could be ready for trial "within four weeks." The trial court denied the motion, but told counsel to file a new motion under section 1050 on August 21, 2018 (the date set for trial) and to "provide the court with more information with regards to what day we can be ready, what day [Dr. Hirsch] will have to meet with [Jimenez]," and when any "report can be provided to the People." The court stated that, depending on the information provided in the motion, the court might grant a reasonable continuance.

The record does not disclose whether Jimenez filed the motion the court suggested. On August 21, 2018, however, the court continued the trial date almost two months, to October 15, 2018. On October 15 the court continued the trial to October 17, and on October 17 to October 19.

On October 19, 2018 Jimenez filed another motion to continue the trial. Counsel for Jimenez stated in his declaration that he had been in a trial in Long Beach since late September and that on November 5, 2018 he was scheduled to begin a trial in a "multiple defendant, multiple murder case." He also said Dr. Hirsch had "not yet returned a report" and had "not come through." The trial court denied the motion, stating counsel began representing Jimenez over 15 months ago, had filed

multiple motions to continue, and was attempting to continue the case for inappropriate reasons.

During the next several days, the court and counsel for Jimenez had three separate discussions, which for some reason the court conducted ex parte (i.e., without the prosecutor present). During the first discussion, on October 22, 2018, counsel for Jimenez explained he was trying to use a court-appointed expert because he had limited funds. He said that there was one expert "we felt was very promising," but that the expert, without explanation, "ended up refusing to take the case." Counsel explained he subsequently retained Dr. Hirsch, but Dr. Hirsch had "been slow and difficult to communicate with" and fell asleep during his evaluation of Jimenez. Counsel also said that he told Dr. Hirsch that Jimenez intended to present "testimony that would support a temporary insanity" defense, but that, because Dr. Hirsch did not conduct the necessary evaluation, counsel believed Dr. Hirsch was "not prepared to service the defense as an expert at this point." Counsel stated that, when he realized Dr. Hirsch would not provide helpful testimony, he "cleared with the family coming out of pocket for a defense expert" and contacted two potential expert witnesses, but neither was available. The court stated counsel had "plenty of opportunity" to obtain any expert witnesses necessary to present a temporary insanity defense, particularly given that Jimenez was not in custody.

During the second ex parte discussion, on October 24, 2018, counsel for Jimenez repeated the reasons he needed a continuance, stating there was "no way this case can be tried without an expert." During the third ex parte discussion, on October 25, 2018, counsel for Jimenez said he had recently

6

contacted a new potential expert, a Dr. Booker, who initially told counsel he could participate in the trial, but later said he would not be available until "well after" the trial finished. Counsel stated he had been "trying to get the right expert" for approximately six months, but was unsuccessful "because of the financial difficulties" and because the "panel experts just have proven incapable of following through." Counsel reiterated Dr. Hirsch did not "conduct[ ] the investigation that [counsel] employed him to conduct and, therefore, [did not] have a report or an opinion that is compatible with the defense."

The trial court denied Jimenez's request for a further continuance. The court explained that the defense had "gone through numerous experts" and that counsel for Jimenez had "the case a year and a half" and could have made "proper arrangements" to obtain an appropriate expert witness. The court also told counsel it did not "know enough about . . . your defense to know what the expert is going to do for you."

> D. *The People Present Their Evidence, and Jimenez Testifies in His Defense*

Dr. Gracie-Ann Esther Dinkins, a trauma and acute surgeon who treated Byanka, testified about Byanka's facial injuries. Dr. Dinkins stated Byanka had a triangular shaped laceration between her eyebrows "that penetrated the skin . . . to the depth of the actual skull." In Dr. Dinkins's opinion, the laceration "was caused by a penetrating object," such as a knife. Dr. Dinkins stated Byanka had several other lacerations on her face that were also "consistent with the use of" a knife or other "penetrating object."

Dr. Marvin Pietruszka, a doctor who specialized in anatomic and clinical pathology, testified for Jimenez. In his opinion, the lacerations on Byanka's face were caused by blunt force trauma, not a sharp object. Dr. Pietruszka also stated that, in his opinion, even if a knife caused Byanka's injuries, it could not have been the knife recovered from Jimenez's car.

A criminologist testified she performed DNA analyses of the blood obtained in the investigation. The criminologist concluded that Jimenez was the "major contributor," and Byanka a "possible minor contributor," to the blood found on the knife and that the blood at the residence was from Jimenez and Byanka.

Jimenez testified in his defense. According to Jimenez, on the day of the incident he and Byanka were arguing about how to raise H.J. At one point, Byanka said Jimenez was going to cause her kids to be taken from her. She pulled out a knife and threatened to stab Jimenez if that happened.[2] Byanka threw the knife on the floor and said she would have her "brother do the dirty work."

Next, according to Jimenez, Byanka picked up H.J. and said that H.J. did not look like her and that she was going to kill the baby. Byanka threw H.J. on the couch, and H.J. screamed. Jimenez wanted to help H.J., but Byanka picked up the knife and told Jimenez that, if he touched H.J., she would stab him. Jimenez then hit Byanka in the face six times. He did not remember what happened immediately after that and "kind of blacked out" after "punching her."

---

[2]     Byanka has three other children. Jimenez is not their father.

8

Jimenez testified he next remembered standing over Byanka and putting H.J. into her car seat. He picked up the knife, went into the kitchen, and slit his wrists. He grabbed a towel, wrapped the knife in the towel, went to his car, and called Tiffany.

### E.    *A Jury Convicts, and the Trial Court Sentences*

The jury convicted Jimenez of inflicting corporal injury on a cohabitant resulting in a traumatic condition and assault by means of force likely to produce great bodily injury. The jury also found true the allegations that, in the commission of both offenses, Jimenez personally inflicted great bodily injury that caused Byanka to become comatose due to brain injury and under circumstances involving domestic violence.[3]

On the conviction for inflicting corporal injury on a cohabitant, the trial court sentenced Jimenez to the upper term of four years, plus five years for the enhancement under section 12022.7, subdivision (b). On the conviction for assault by means of force likely to produce great bodily injury, the court sentenced

---

[3]    The jury acquitted Jimenez of attempted murder and deadlocked on the lesser included offenses of attempted voluntary manslaughter in the heat of passion and attempted voluntary manslaughter based on imperfect self-defense or defense of another. The jury also deadlocked on the aggravated mayhem count. The court declared a mistrial on the lesser included offenses of attempted murder and, on the People's motion, dismissed the mayhem count.

9

Jimenez to the middle term of three years, but stayed execution of the sentence under section 654.[4]  Jimenez timely appealed.

## DISCUSSION

A.  *The Court Did Not Abuse Its Discretion in Denying Jimenez's Second Motion for a Continuance*

Jimenez contends he demonstrated good cause for a continuance by showing he needed additional time to obtain an expert to testify in support of his defense of temporary insanity. He argues the court's order denying his request to continue the trial was arbitrary and violated his due process rights.

Continuances of criminal trials "shall be granted only upon a showing of good cause."  (§ 1050, subd. (e); see Cal. Rules of Court, rule 4.113 ["Motions to continue the trial of a criminal case are disfavored and will be denied unless the moving party . . . presents affirmative proof in open court that the ends of justice require a continuance."].)  "In making that determination, courts consider whether the moving party has acted diligently, the anticipated benefits of the continuance, the burden that the continuance would impose on witnesses, jurors, and the court, and whether a continuance will accomplish or hinder substantial

---

[4]     On the conviction for assault, the court stated it was imposing and staying the five-year enhancement under section 12022.7, subdivision (b).  On both the conviction for assault and the conviction for inflicting corporal injury on a cohabitant, the court stated it was imposing and staying the enhancement under section 12022.7, subdivision (e).  The court, however, did not impose a three-, four-, or five-year enhancement under subdivision (e).  We will direct the court to impose terms under that subdivision and stay execution of those terms.

justice." (*People v. Reed* (2018) 4 Cal.5th 989, 1004; see *People v. Doolin* (2009) 45 Cal.4th 390, 450.)

"Trial courts have wide discretion to determine whether [good] cause exists." (*People v. Reed*, *supra*, 4 Cal.5th at p. 1004; see *People v. Peoples* (2016) 62 Cal.4th 718, 749; *People v. Doolin*, *supra*, 45 Cal.4th at p. 450.) Where, as here, the trial court denies a motion for a continuance, "we review all circumstances relevant to the motion to determine whether the trial court's decision was so arbitrary as to deprive the movant of due process." (*Reed*, at p. 1004; see *Doolin*, at p. 450.) "'"There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied."'" (*People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1181, disapproved on another ground in *People v. Rangel* (2016) 62 Cal.4th 1192, 1216; see *People v. Mungia* (2008) 44 Cal.4th 1101, 1118.) "'The party challenging a ruling on a continuance bears the burden of establishing an abuse of discretion'" and prejudice, "'and an order denying a continuance is seldom successfully attacked.'" (*Peoples*, at p. 749; see *Doolin,* at p. 450; *People v. Beames* (2007) 40 Cal.4th 907, 920.)

Although Jimenez attempts to treat his efforts to continue the trial as a single request, Jimenez in fact filed two separate motions. He first moved to continue the trial in August 2017, when his attorney argued he needed three to four weeks for Dr. Hirsch to evaluate Jimenez. Although the court initially denied the motion (and invited Jimenez to file a new motion with more detail), four days later the trial court continued the trial nearly two months—longer than Jimenez had requested.

11

Jimenez cannot show the trial court's ruling on his first motion to continue the trial was an abuse of discretion or caused him prejudice. (See *People v. Doolin*, *supra*, 45 Cal.4th at p. 450 ["Absent a showing of . . . prejudice, the trial court's denial does not warrant reversal."]; *People v. McCann* (1939) 34 Cal.App.2d 376, 378 [defendant "was not prejudiced" where he "moved for a continuance of four or five days, which was denied," but the court nevertheless "continued [the trial] for seven days" to allow the defendant to "procure the testimony of his allegedly absent witness"].)

Two months later, Jimenez filed another motion to continue the trial. This time, counsel for Jimenez stated that, because Dr. Hirsch would not give the testimony Jimenez had anticipated he would give, Jimenez needed additional time to obtain another expert witness. It is the trial court's order denying this motion that is the subject of this appeal.

Where a defendant seeks a continuance to obtain the testimony of a witness, "[g]ood cause requires a defendant to show that he or she exercised due diligence in pursuing the witness's presence, the witness's expected testimony was material and not cumulative, the testimony could be obtained within a reasonable time, and the facts the witness would provide could not otherwise be proven." (*People v. Caro* (2019) 7 Cal.5th 463, 499-500; see *People v. Roybal* (1998) 19 Cal.4th 481, 504.) The trial court did not abuse its discretion or violate Jimenez's due process rights in ruling Jimenez did not satisfy all of these requirements.

Whether Jimenez exercised reasonable diligence in attempting to obtain an expert witness to testify on the defense of temporary insanity is not clear from the record. Counsel for

Jimenez consulted with at least two experts, and during his October 25, 2018 ex parte discussion with the court, counsel stated he spent approximately six months trying to retain the right expert witness. As the court observed, however, the People charged Jimenez 17 months earlier, in May 2017 (although the preliminary hearing was not until January 2018), counsel was retained to represent Jimenez shortly thereafter, and counsel did not say whether he had consulted with any potential experts during the first 11 months of his work on the case. (See *People v. Jenkins* (2000) 22 Cal.4th 900, 958 ["One year and nine months . . . between the preliminary hearing and the evidentiary portion of the trial" was "ample time [for the defendant] to investigate, to examine the discovered material that had been provided by the prosecution, and to prepare to meet the case against him."]; *People v. McFadden* (1970) 4 Cal.App.3d 672, 687 [three months and eight days was enough time for the defendant "to obtain expert medical testimony favorable to [the defendant], if such could be obtained," about the defendant's "ability to understand questions asked of him" during his confession].) In addition, counsel's description of his efforts during the prior six months to obtain the expert witness he was looking for was vague. Although counsel mentioned one potential expert he thought looked promising (but who ultimately decided not to testify), counsel did not say when he learned the witness would not be able to testify or how long he waited before consulting with Dr. Hirsch.

But even if counsel for Jimenez exercised reasonable diligence in seeking to obtain the expert testimony he thought he needed, Jimenez did not meet the other requirements for a continuance. In particular, Jimenez did not meet his burden to

13

show he would be able to obtain material testimony from an expert witness. While counsel for Jimenez stated he was seeking testimony that could establish a temporary insanity defense, he did not describe—even in general terms—the facts an expert witness would testify to that might support such a defense. (See *People v. Beeler* (1995) 9 Cal.4th 953, 1004 [counsel's statements that the defendant potentially had brain damage that "'*appear[ed]* relevant' and '*suggest[ed]*' problems with defendant's mental state" were too general to justify a continuance]; *People v. Fountain* (1915) 170 Cal. 460, 464 ["[i]t was necessary to show what facts it was expected . . . witnesses would testify to in order that the court might determine whether the testimony it was expected they would give would be material to the defendant, and so warrant the granting of a continuance"]; *People v. Walton* (1929) 97 Cal.App. 782, 783 [trial court did not abuse its discretion in denying a motion to continue the trial where "the affidavit fail[ed] to state the facts to which the witnesses would testify if present"].) To establish an insanity defense, a defendant must "'prove[ ] by a preponderance of the evidence that he or she was incapable of knowing or understanding the nature and quality of his or her act [or] of distinguishing right from wrong at the time of the commission of the offense'" because of some "'mental disease or defect.'" (*People v. Blakely* (2014) 230 Cal.App.4th 771, 774; see *People v. Lawley* (2002) 27 Cal.4th 102, 169-170 & fn. 26.) Counsel for Jimenez did not explain what mental disease or defect an expert would testify Jimenez suffered from that rendered Jimenez temporarily insane when he attacked Byanka. As the trial court stated during the last ex parte discussion with counsel for Jimenez, the court did not

14

fully understand what Jimenez's defense was or how the expert's testimony was going to support it.

But the most glaring shortcoming with Jimenez's second motion to continue the trial was that he did not show he could obtain the desired testimony within a reasonable time. Counsel for Jimenez initially stated in August 2018 that Dr. Hirsch needed three or four weeks to prepare an opinion. It didn't happen. In October 2018, when counsel for Jimenez no longer anticipated Dr. Hirsch would provide a favorable opinion, counsel did not tell the court how long he needed to obtain a new expert, how long the expert would need to evaluate Jimenez and prepare an opinion, or how long counsel would need to prepare for trial based on the new expert's opinion. Given that counsel for Jimenez had already consulted with two experts who were either unable or unwilling to provide the testimony Jimenez was hoping for, the court acted within its discretion in finding it was unlikely Jimenez would be able to obtain within a reasonable time (or ever) the desired-but-elusive expert witness. (See *People v. Howard* (1992) 1 Cal.4th 1132, 1171 [trial court did not abuse its discretion in denying the defendant's request for a continuance to obtain expert testimony where the "defendant did not show that any expert existed who would be willing and able to offer material testimony within a reasonable time" and the "defendant could only offer the prospect of further delay while he searched"], disapproved on another ground in *People v. Rhoades* (2019) 8 Cal.5th 393, 425, fn. 12; see also *People v. Roybal, supra,* 19 Cal.4th at p. 505 [trial court did not abuse its discretion in denying a motion to continue an evidentiary hearing where "defense counsel's vague expressions of hope that an appropriate expert could be found and made available without undue delay

15

were not encouraging"]; *People v. Beeler*, *supra*, 9 Cal.4th at p. 1004 [trial court did not abuse its discretion in denying a motion for a continuance where the "lengthy delays and prior continuances permit[ted] serious doubt whether the additional time requested would have yielded meaningful evidence" and counsel stated only that a "doctor *believe[d]* that he [could] conclude the medical work needed" for the defense within a few months].)

B.    *Jimenez Has Not Shown His Trial Counsel Provided Ineffective Assistance*

"To make out a claim that counsel rendered constitutionally ineffective assistance, 'the defendant must first show counsel's performance was deficient, in that it fell below an objective standard of reasonableness under prevailing professional norms. Second, the defendant must show resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different.'" (*People v. Hoyt* (2020) 8 Cal.5th 892, 958; see *People v. Mai* (2013) 57 Cal.4th 986, 1009.)  "Whether counsel's performance was deficient, and whether any deficiency prejudiced defendant, are mixed questions of law and fact subject to our independent review." (*In re Gay* (2020) 8 Cal.5th 1059, 1073; accord, *In re Long* (2020) 10 Cal.5th 764, 774.)

"Usually, 'ineffective assistance [of counsel claims are] more appropriately decided in a habeas corpus proceeding.'" (*People v. Hoyt*, *supra*, 8 Cal.5th at p. 958.)  On direct appeal, "we may reverse 'only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide

16

one, or (3) there simply could be no satisfactory explanation.'" (*People v. Arredondo* (2019) 8 Cal.5th 694, 711; see *People v. Johnsen* (2021) 10 Cal.5th 1116, 1165; *People v. Mai*, *supra*, 57 Cal.4th at p. 1009.) "'[W]here counsel's trial tactics or strategic reasons for challenged decisions do not appear on the record, we will not find ineffective assistance of counsel on appeal unless there could be no conceivable reason for counsel's acts or omissions.'" (*Johnsen*, at p. 1165.) "'All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding.'" (*Hoyt*, at p. 958.)

Jimenez argues his trial counsel rendered ineffective assistance by failing to obtain the expert witness that he was looking for to support a temporary insanity defense. Jimenez appears to contend there was no rational tactical purpose for his trial counsel's actions because his counsel admitted he wanted to present the defense. The record does not affirmatively show, however, counsel's failure to obtain and call an expert witness on temporary insanity was the result of deficient performance, nor can we say there is no satisfactory explanation for counsel's conduct.

As discussed, the evidence on whether counsel for Jimenez was diligent in seeking to obtain the sought-after expert was mixed. Counsel for Jimenez stated he did not try to retain an expert witness until a few months before the trial date. But counsel told the court Jimenez's lack of funds limited the potential expert witnesses counsel could consult with. Moreover, the record reflects that, once counsel began consulting with experts, counsel's inability to obtain one was not for lack of trying. After consulting with one expert who ultimately decided not to testify, counsel concluded Dr. Hirsch's testimony would not

be helpful—a determination Jimenez does not challenge on appeal. (See *People v. Bolin* (1998) 18 Cal.4th 297, 334 ["Whether to call certain witnesses is [generally] a matter of trial tactics, unless the decision results from unreasonable failure to investigate."]; see also *People v. Frederickson* (2020) 8 Cal.5th 963, 1001.) A very reasonable explanation for counsel's failure to obtain an expert was that counsel could not find an expert to say what he (or Jimenez) wanted the expert to say.

Moreover, Jimenez did not show what specific testimony an expert could have offered to support the defense of temporary insanity or that any expert was available and willing to offer such testimony. To show that counsel rendered ineffective assistance by failing to call an expert witness, the defendant must identify "'exculpatory or impeachment evidence that counsel could have revealed by . . . examination of defense experts . . . that would have produced a more favorable result at trial. . . . Such claims must be supported by declarations or other proffered testimony establishing both the substance of the omitted evidence and its likelihood for exonerating the accused.'" (*People v. Bolin, supra,* 18 Cal.4th at p. 334.)

Jimenez asserts an expert "could have explained that when [Jimenez] said he 'lost it,' he was suffering from temporary insanity or some other psychological impairment that caused him to react the way he did . . . ." But Jimenez's speculation about what a hypothetical expert might have said is not sufficient. (See *People v. Mai, supra,* 57 Cal.4th at p. 1018 ["'"We cannot evaluate alleged deficiencies in counsel's representation solely on defendant's unsubstantiated speculation."'"].) Jimenez did not show what mental disease or defect an expert witness could have testified Jimenez suffered from, or how the disease or defect

18

prevented Jimenez from understanding the nature of his actions or distinguishing right from wrong. Indeed, there was strong evidence Jimenez was not temporarily insane. For example, the day after the incident Jimenez admitted that he remembered punching Byanka six times and that he did so because he was "tired of her throwing the baby," which suggested Jimenez understood the nature of his actions.

Finally, Jimenez points to his trial attorney's statements to the court that he had difficulty preparing for trial because of family obligations and that he was involved in trials shortly before and shortly after Jimenez's trial. But Jimenez does not identify any specific deficiency in counsel's performance caused by counsel's other obligations (except for failing to obtain the "right" expert witness), nor does he say how he was prejudiced by counsel's other obligations. Because the record does not clearly and affirmatively demonstrate Jimenez's counsel provided ineffective assistance, his argument is more appropriately resolved on a petition for habeas corpus.

## DISPOSITION

The convictions are affirmed. The trial court is directed to impose terms under section 12022.7, subdivision (e), and then stay execution of those terms.


SEGAL, Acting P. J.


We concur:


FEUER, J.


IBARRA, J.*

---

*       Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.